IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JONI VEJSIU,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** `CIV-12-697-F` |
| **HOOMAN KARAMIAN a/k/a** | ) | |
| **NIK RICHIE,** | ) | |
| **JAMES GRDINA, JOHN GRDINA,** | ) | |
| **FRANK DIMAGGIO, AND** | ) | **JURY Requested** |
| **DIRTY WORLD, LLC d/b/a** | ) | |
| **THEDIRTY.COM,** | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S COMPLAINT & APPLICATION FOR INJUNCTIVE RELIEF**

COMES NOW Joni Vejsiu (hereinafter "Plaintiff" or "Vejsiu") files this Plaintiff's Complaint & Application for Injunctive Relief against Defendants Hooman Karamian a/k/a Nik Richie (hereinafter "Richie"), Dirty World, LLC d/b/a thedirty.com (hereinafter "Dirty World"), James Grdina, John Grdina, and Frank DiMaggio to recover legal and equitable relief for Defendants' violation of Plaintiff's right of privacy, Defendants' intentional infliction of emotional distress upon Plaintiff, and Defendants' civil conspiracy.

A.     PARTIES

1.     Plaintiff, Joni Vejsiu, an individual, is a resident of Oklahoma City, Oklahoma.

2.      Defendant, Dirty World, LLC ("Dirty World"), is a corporation that is incorporated under the laws of the State of Delaware. Dirty World has its principal place of business in Arizona. Dirty World may be served with process by serving its registered agent, Corporate Creations Network, Inc., 3411 Silverside Road, Rodney Building #104, Wilmington, Delaware 19810.

3.      Defendant, Nik Richie, ("Richie" or "Nik") an individual and a citizen of the State of Arizona, and can be served in Arizona.

4.      Defendant, James Grdina, ("Grdina") an individual and a citizen of the State of Arizona—upon information and belief, may be served wherever he can be found.

5.      Defendant, John Grdina, ("J. Grdina") an individual and a citizen of the State of Arizona—upon information and belief, may be served wherever he can be found.

6.      Defendant, Frank DiMaggio, ("DiMaggio") an individual and a citizen of the State of Arizona—upon information and belief, may be served wherever he can be found.

B. JURISDICTION & VENUE

7.      The Court has subject matter jurisdiction over the claims brought herein under 28 U.S.C. § 1332 because the parties are residents of different states, and Plaintiff seeks damages of more than $75,000.

8.      The Court has personal jurisdiction over Defendants because they have maintained minimum contacts with the State of Oklahoma sufficient to subject them to personal jurisdiction consistent with due process under the Fourteenth Amendment to the United States Constitution. Defendants have purposefully availed themselves of the benefits and protections of Oklahoma by establishing minimum contacts with Oklahoma and the exercise of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

Furthermore, as detailed more fully below, Plaintiff's causes of action for invasion of privacy, intentional infliction of emotional distress, and civil conspiracy arise out of, and are directly related to, Defendants' contacts with Oklahoma via their Internet website, thedirty.com, rendering specific jurisdiction appropriate. Dirty World is the proprietor of thedirty.com and Richie, DiMaggio, Grdina and J. Grdina ("individual defendants') are responsible for the content that appears on thedirty.com. Merchandise is routinely advertised and sold via thedirty.com in Oklahoma. Giving rise to this complaint, Defendants specifically targeted Plaintiff, who was well known to Defendants as a citizen of the State of Oklahoma, so as to expose her private information to as large an audience as possible both in Oklahoma and beyond and to inflict as much emotional distress as possible.

9.      Venue is proper in Oklahoma City, Western District of Oklahoma under 28 U.S.C. § 1391(a)(2) because all or a part of the events giving rise to the cause of action asserted herein took place in the Western District of Oklahoma, because the claims asserted herein arise through Defendants' unlawful invasion of Plaintiff's privacy and infliction of emotional distress upon Plaintiff while Plaintiff was residing in the Western District of Oklahoma.

C. BACKGROUND FACTS

10.      Dirty World, Richie, James Grdina, John Grdina, and Frank DiMaggio own and operate a website, thedirty.com. It was originated by Richie in 2007, who bills himself on the website as "the world's first ever reality blogger." Those visiting thedirty.com website are presented with several options: they can purchase tee-shirts and other merchandise, read numerous advertisements or look at hundreds of different pictures and comments about people from different parts of the country.  The purpose of the site is to profit from invasion of privacy by deliberately trying to make it scandalous, pornographic, and allowing postings in vulgar,

coarse, or abusive language; many of the postings are foul-mouthed, defamatory and pandering to the scurrilous nature of many who visit and post offensive statements without fact.

11.     There are hundreds of different pictures and comments, also referred to as "posts" or "dirt," on thedirty.com because that is the main attraction the website has to offer. Everyone visiting thedirty.com is invited to "submit dirt" without due diligence, by clicking on the "submit dirt" link and filling out a brief online form.  One can also submit pictures and provide comments about those pictures.

12.     The online form provided by thedirty.com has several boxes that must be filled in by the person submitting the "dirt" such as "Your Post Title," "Your Name," "Phone Number," and "email address." There are categories created by thedirty.com that the individual submitting the dirt can select for his or her post such as "Freddy Fags," "Greeks," and "Horses." An individual submitting "dirt" can also select one of the cities or colleges listed by thedirty.com and there is a "Hot Tip" box that provides space to "tell us what's happening."

13.     Based on information and belief, thedirty.com has become a very popular website over the years and attracts thousands of visitors.  It has even developed its own long list of frequently used terms. Visitors are provided the meanings of those terms so they can understand "the dirt." The definitions of hundreds of terms can be found under the "WTF Dictionary." For example, these are a few of the terms and their definitions as they appear on thedirty.com:

"Egg Roll(s): fat Asians Afro-Brow: hairy eyebrows Bissues: b*tch with issues Dirty Army: the group of people who are fans of thedirty.com Aquafags: underwater fags Douchetard: douche + retard.   Would You?: means "would you sc**w this chick?"

14.     On or about August 8, 2010, this post was made about Plaintiff:

"Nik – Meet Joni she lives in OKC.  Her and her friends go out every weekend

and act like raunchy h*es.  This nasty tw*t has been getting' around Oklahoma City like nobody's business.  She really thinks people are afraid to look her in the face because she's so beautiful and intimidating, but everyone's really gagging over her butt-nasty breath and trying to stay out of her face to avoid the stench.  I heard she's been sleeping around with OKC Thunder Basketball players, chasin' that money, thinking one of them will set her up, I did hear that a few of them set her up WITH A TRAIN, nice try Joni guess you'll have to keep chasin' that dollar."

15.     Plaintiff repeatedly requested that Defendants remove any and all posts referencing her to no avail.

16.     Even after Plaintiff's requests, Defendants continued to post about her.  On or about March 10, 2011, Defendants posted the following:

"Hey Nik this is Joni Vejsiu you've already called her out for being a golddigger and she said you are a liar and the dirty is bullsh*t and she doesn't belong here cause she's a good girl. She's the sloppiest drunk i have ever seen here is proof that she will ride anything that's holding a *** and has <u>money</u>.  BTW she just met this guy about five minutes before these pics were taken she saw a hummer limo and jumped all over him.  I think she's way too old to be chasing trout.  She tells everyone she looks like Paris Hilton and that she's hot enough to marry a millionaire.  What do ya think Nik is she amazing and hot like she thinks?  PS somebody tell David to run?"

### D. CAUSES OF ACTION

### COUNT 1 Invasion of Privacy/Public Disclosure of Private Facts

17.     Plaintiff incorporates paragraphs 1 through 16 by reference as if fully set forth herein.

18.     Defendants publicized information about Plaintiff's private life.  As detailed

above, Defendants allowed posts on the website that stated "watch out guys you might get some kinds of STDs, this bitch sleeps with whoever buys her a drink."  Although this statement holds no merit, it is damaging to Plaintiff's character, and alleges she is infected with sexually transmitted disease (per se defamation) and certainly an invasion of privacy as this person has no access to any proof, and indeed any such STD is denied.

19.     Plaintiff has suffered extreme mental anguish in the past and is likely to suffer extreme mental anguish in the future as a result of Defendants' wrongful acts, causing an inability to focus at work, loss of sleep, tearful emotional breakdowns, anxiety, depression, embarrassment, shame, humiliation and paranoia.  She has received hundreds of harassing email messages and there have been hundreds of public comments posted about her on thedirty.com.

## COUNT 2 Intentional Infliction of Emotional Distress

20.     Plaintiff  incorporates paragraphs 1 through 19 by reference as if fully set forth herein.

21.     Defendants' conduct in posting the information detailed above was intentional. Defendants either knew or had reason to know that if they posted the information regarding Plaintiff, it was going to create a high degree of risk of harm to Plaintiff but deliberately proceeded to post the information in conscious disregard or with indifference to that risk. The primary risk created by Defendants' conduct was emotional distress and that is precisely what occurred.

22.     Defendants' conduct was extreme and outrageous. Knowing that no individual would want such postings in a public forum and with full knowledge of the harm likely to occur, Defendants went forward with publication on thedirty.com and refused to remove the harmful information even after reasonable requests were made to do so.

23.     Defendants' conduct was reprehensible and far outside the bounds of decency and serves no legally sanctioned purpose.  Based on their own writings, it is clearly Defendants' intent to do as much emotional damage to Plaintiff and to others as is humanly possible. Defendants' conduct proximately caused severe emotional distress to Plaintiff.

      a.   Plaintiff has experienced painful emotional and mental reactions. She has experienced an inability to focus at work, loss of sleep, tearful emotional breakdowns, anxiety, depression, embarrassment, shame, humiliation and paranoia.

      b.   This has led to a huge loss of self esteem and constant worry for Plaintiff.  The distress is continual because Defendants have vowed to keep posting harmful information about Plaintiff permanently.

      c.   Her own father having discovered the site has ceased talking to her, having believed the lies contained therein, and the unwarranted libel/defamation, and has seriously injured her emotionally.

**COUNT 3 Civil Conspiracy**

24.     Plaintiff  incorporates paragraphs 1 through 23 by reference as if fully set forth herein.

25.     Upon information and belief, based on the conduct of Defendants, jointly and/or severally, Defendants combined to accomplish and agreed to accomplish an unlawful purpose and/or or to accomplish a lawful purpose by unlawful means by engaging in one or more unlawful overt acts which proximately caused Plaintiff to suffer damages. Upon information and belief, Defendants agreed to publish the information regarding Plaintiff on their website, which Defendants either own, control, or manage. As a result of such civil conspiracy between

Defendants, Plaintiff has suffered damages.

## COUNT  4

## DEFAMATION

26.    Paragraphs above are incorporated herein.

27.    Plaintiff state many false facts and place her in a false and damaging light; the Defendants have created stress and damage to relationships, including her parents, whereby:

a.    the defendants published, disseminated false, deceptive, fraudulent, and defamatory statements relating to the plaintiffs, the Plaintiffs' profession, person and reputation,

b.     the statements were disseminated with actual malice and with knowledge of their falsity or in reckless disregard of the truth of the statements,

c.    the defendants' conduct has injured her reputation with her family and especially her father who has shunned and disowned her, as well as the business reputation damage which cannot be quantified, and

d.    the defendants' actions were intentionally inflicted, which caused them extreme emotional distress and financial loss.

WHEREFORE Plaintiffs demand for defamation damages in excess of $500,000 Five Hundred Thousand Dollars ($500,000.00), and reasonable attorneys fees and costs.

## E. RELIEF SOUGHT

## COUNT 1 Request for Preliminary Injunction

28.   Plaintiff will suffer irreparable injury if Defendants are not enjoined while this suit is pending from continuing to post damaging and humiliating information regarding Plaintiff. While the severe damage that has already been done cannot be undone, it can be stopped at this

point and Defendants can be prevented making any further damaging posts and from permanently displaying Plaintiff's information on page one of their website. With every day that passes, more people visiting thedirty.com website learn about Plaintiff and the damage is exacerbated.

29. There is no adequate remedy at law because the legal remedy is insufficient; while Defendants will likely be forced to pay money damages in the future, no amount of money could ever undo the mental anguish being caused by Defendants' repeated abuse of her and constant efforts to expose her private information.

30. There is a substantial likelihood that Plaintiff will prevail on the merits because in order to prove public disclosure of private facts, Plaintiff must show that Defendants publicized information about Plaintiff's private life; the publicity would be highly offensive to a reasonable person; the matter publicized is not legitimate public concern; and Plaintiff suffered an injury as a result of the Defendants' disclosure. In the present case, there is absolutely no doubt that Defendants have publicized and continue to publicize information about Plaintiff's private life. The problem with the publication of criminal or fraudulent purposes in a relationship, and other remarks of poor character relating to the personal relationships between man and woman, is that is likely to cause people to look down upon the Plaintiff, and defiles their reputation in manners that are often not spoken aloud, and there is likewise no doubt that this type of publicity would be found to be highly offensive to a reasonable person. There is no legitimate public concern involved in this matter; Plaintiff is not a public figure; she is a private citizen who has done her best to mind her own business and there is no public interest whatsoever in publicizing her relations, or the false light or alleged evil intent of such relations, whether truthful or not. Lastly, as detailed more fully above, Plaintiff has suffered severe mental anguish as a result of

Defendants' actions. Since she can prove all of the elements required for public disclosure of private facts, there is a substantial likelihood that Plaintiff will prevail on Count 1.

31. If it is found that public disclosure of private facts does not provide an adequate remedy for the severe emotional distress caused Plaintiff by Defendants' conduct, there is certainly a substantial likelihood she would then prevail on Count 2, intentional infliction of emotional distress. Plaintiff would be required to prove that she is a person, which is not in question, and that Defendants acted intentionally, which is likewise not in question since Defendants have a documented history of posting personal information. Plaintiff would also have to show that her emotional distress has been severe, as detailed above, and that Defendants' conduct has been extreme and outrageous. It is hard to imagine what could be more extreme and outrageous than using one's website to target a private citizen and publicize her private relationships and alleging wrongful activity in information over and over again in an effort to make damage on a person. Plaintiff would also have to show that Defendants' conduct proximately caused her emotional distress and that should not be difficult since this is the only source of severe emotional distress in her life at this time. Therefore, a substantial likelihood exists that Plaintiff will prevail on Count 2.

32. THE fact that some items have been repeated in this suit should not allow them to repeatedly publish the same information without consequence.

33. The harm faced by Plaintiff clearly outweighs the harm that would be sustained by Defendants if the preliminary injunction were granted and issuance of a preliminary injunction would not adversely affect the public interest. In fact, the only way that Defendants could possibly be harmed more than Plaintiff is if there were some public interest in what they are publishing regarding Plaintiff. However, as made clear above, Plaintiff is a private citizen, not a

public official or public figure, and it is not Defendants' intent to enlighten or inform but rather to embarrass and humiliate Plaintiff as much as possible and to completely abuse her right of privacy.

34.   Oklahoma has followed the U.S. Supreme Court as it has recognized that some types of speech are entirely excluded from (or entitled only to narrowed) constitutional protection. Freedom of speech does not protect (a) obscene materials (Miller v. California, 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973); Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957)); (b) child pornography (New York v. Ferber, 458 U.S. 747, 764, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982)); (c) fighting words (Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 62 S.Ct. 766, 768-69, 86 L.Ed. 1031 (1942)); (d) incitement to imminent lawless activity (Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969)); and (e) purposefully-made (or recklessly-made) false statements of fact, such as libel, defamation, or fraud (see, e.g., Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); Gertz, supra note 43, 418 U.S. at 348-49, 94 S.Ct. at 3011-12; Beauharnais v. Illinois, 343 U.S. 250, 266, 72 S.Ct. 725, 735, 96 L.Ed. 919 (1952); Schneider v. State of N.J., 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939)). Speech that is vulgar, offensive, and shocking is not entitled to absolute constitutional protection under all circumstances. FCC v. Pacifica Foundation, 438 U.S. 726, 747, 98 S.Ct. 3026, 3039, 57 L.Ed.2d 1073 (1978). The Court has recognized constitutional limits on the type of speech that may be the subject of defamation actions. In cases where the statements cannot reasonably be interpreted as stating actual facts about the individual, those statements are protected under the First Amendment. Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110 S.Ct. 2695, 2706-07, 111 L.Ed.2d 1 (1990); Hustler, supra note 42, 485 U.S. at 50, 108 S.Ct. at 879; Letter Carriers v.

Austin, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); Greenbelt Cooperative Publishing Ass'n v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). A public official (or public figure) who prosecutes a defamation case must prove that the publication was a defamatory falsehood and that the statement was made with actual malice (with knowledge that it was false or with reckless disregard of whether it was false). New York Times, supra note 34, 376 U.S. at 279-280, 84 S.Ct. at 725-26; Curtis Publishing Co. v. Butts, 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094 (1967). For both public officials and public figures, a showing of actual malice is subject to a clear and convincing standard of proof. Gertz, supra note 43, 418 U.S. at 342, 94 S.Ct. at 3008. In the present case, Defendants' sole motivation is to harass and humiliate and there is absolutely no public interest served by allowing it to continue.

35. Plaintiff is well aware that prior restraints on freedom of speech have long been disfavored in American law. Near v. Minnesota, 283 U.S. 697 (1931). Plaintiff is also aware that because of the presumption against constitutionality, the party seeking to justify a prior restraint on speech carries a heavy burden of justification. Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971).  Plaintiff can meet the burden.

36.    For years now, primarily because the Communications Decency Act said that website operators would not be held liable for content created by third parties, the Internet has become a medium where anything goes. Operating far outside the boundaries of traditional media outlets and without any of the same self-policing standards, websites and blogs have become the outlet where one can say just about anything about anyone else. It wasn't meant to be this way. "The Communications Decency Act was not meant to create a lawless no-man's-land on the Internet." Fair Housing Council v. Roommate.com, LLC, 521 F.3d 1157 (9th Cir. 2008).

37.    The Internet is not a fragile new means of communication that could easily be

smothered in the cradle by overzealous enforcement of laws and regulations applicable to brick-and-mortar businesses. Rather, it has become a dominant – perhaps the preeminent – means through which commerce is conducted. And its vast reach into the lives of millions is exactly why we must be careful not to exceed the scope of immunity provided by congress and thus give online businesses an unfair advantage over their real-world counterparts, which must comply with laws of general applicability. Id. at 1166.

38.     Realizing the vast reach of a website such as thedirty.com and, as the present case demonstrates, its complete unwillingness to police itself or operate within common standards of decency, courts are left with no choice but to fill the void. It must be remembered that protection as to prior restraint is not unlimited. Near v. Minnesota at 716. A person may be prevented from speaking if what he or she will say or the time, place and manner in which he or she will say it will surely result in direct, immediate and irreparable damage. New York Times Co. v. United States, 403

39.     U.S. 713, 730 (1971) emphasis added. Plaintiff has demonstrated that the continued publication of her personal information and Defendants' unceasing efforts to embarrass and humiliate her in any way possible are causing severe mental damage, causing severe anxiety and leading her toward a complete emotional breakdown. Should Plaintiff have to actually experience such a breakdown before the Defendants will be stopped? Many of the people commenting on Defendants' website have stated how wrong they find Richie.  It does not appear to bother him or the other Defendants in the least.   This heinous behavior should be punished.

40.     "Discussing the validity of a judge's order in a prior restraint case, the Supreme Court of the United States said, 'The gravity of the evil, discounted by its improbability, justifies

such invasion of free speech as is necessary to avoid the danger'." In re I.G. Services Ltd, 244 B.R. 377 (Bankr. W.D. Tex. 2000). The "gravity of the evil" in the present case cannot be overemphasized. The Defendants have demonstrated that if a publication will humiliate and damage Plaintiff, they shall post it on their website. It is taking a serious toll on Plaintiff, as it would on any individual. Therefore, Defendants have forfeited their right of free speech and the Court is completely justified in granting injunctive relief.

41.     Plaintiff is not required and should not be required to post a bond; but if required will do so in the amount the Court deems appropriate.

42.     Plaintiff asks the Court to set her application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against Defendants.

## COUNT 2 Piercing the Corporate Veil

43.     Upon information and belief, Plaintiff seeks to establish liability against all individual Defendants by piercing the corporate veil. Upon information and belief, Dirty World, LLC is a limited liability company that was organized and operated as a mere tool or business conduit of another, i.e., it was an alter ego of the individual Defendants. Upon information and belief, Dirty World, LLC was utilized by the individual Defendants to evade an existing legal obligation.

## G. Request for Permanent Injunction

44.     Plaintiff asks the Court to set her application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendants.

## H. CONCLUSION AND PRAYER

1. Due to Defendants' wrongful and unlawful acts described herein, Plaintiff seeks the following:

(a)     a **temporary restraining order, temporary injunction and permanent injunction** as set forth above;

(b)     her actual **damages** as proven during the trial of this case;

(c)     **punitive** damages;

(d)     Plaintiff's necessary and **reasonable attorneys' fees and all costs of Court**;

(e)     prejudgment and post-judgment **interest** as provided for by law; and

(f)     all other relief to which Plaintiff is entitled.


Respectfully submitted,
By: /s/Timothy McCoy_____
TIM MCCOY, OK Bar No. 0010838
4528 North Classen Blvd.
Oklahoma City, OK 73118
timmccoylawfirm@aol.com
(405) 319-0000 (Telephone)
(866) 697-2012 (Facsimile)
ATTORNEY FOR PLAINTIFF


CERTIFICATE OF SERVICE

I hereby certify that I forwarded a copy of this pleading to an individual who has represented that he is counsel for Defendants as follows on this 15th day of June 2012, addressed as follows: David S. Gingras Gingras Law Office, PLLC Fax: (480) 248-3196 David.Gingras@webmail.azbar.org

/s/Timothy McCoy_____
M MCCOY